*Municipal Court of the City Boston*

No. 161056

### CARMEL CREDIT UNION

v.

### BANKER'S DISCOUNT TRUST, INC. et al.

Argued: June 21, 1968   Decided: June 24, 1968

*Present*: Adlow, C. J., Lewiton, Shamon, J.J.
Case tried to *Mottola, Sp. J.* in the Municipal
Court of the City Boston.

*Adlow, C.J.* Action of tort for conversion
of an automobile given as security for a loan
from the Carmel Credit Union to Edward S.
Obey. The defendant's answer relied on a su-
perior lien to that of plaintiff on said auto-
mobile.

The case was tried on an Agreed Statement
of Facts which can be briefly summarized thus:

1. On *December* 23, 1965, Donald McKenzie Jr., of Somerville, purchased a 1963 used Cadillac sedan from the defendant, Pontiac Village, Inc., (hereinafter referred to as Pontiac) for a cash price of $2,680 and total time price of $3,694, and paid for said automobile in part by a purchase money security agreement dated December 23, 1965. On this day the car was delivered to McKenzie who bought same for his own, personal, family or household purposes.

2. On *December* 28, 1965 Pontiac assigned said security agreement for a consideration of $2,280 to the Banker's Discount Trust, Inc., hereinafter referred to as Banker's. On December 30, 1965 Banker's filed financing statements with respect to said security agreement with the Secretary of State, and on *January* 4, 1966, filed financing statements with the clerk's office in the City of Somerville.

3. When payment was refused on the checks given by McKenzie to Pontiac as a down payment at the time the sale was consummated, Pontiac notified Banker's which contacted McKenzie and learned that McKenzie had parted with possession of the car without notifying Pontiac or Banker's. On *January* 19, 1966, the car was located and repossessed from Edward Obey of Burlington, Massachusetts. It was thereafter sold, on *January* 28, 1966, in compliance with the terms of the security agreement. The sale price was $2,280, which the parties agreed was the fair cash value.

4. On *January* 8, 1966 Edward S. Obey applied to the Carmel Credit Union, hereinafter referred to as Carmel, for a loan to finance the purchase of the car in issue from Town Motors of Charlestown, Massachusetts. Town Motors was a duly licensed dealer in second hand cars. How Town Motors acquired said car is not in evidence. Carmel, on *January* 8, 1966, granted said loan to Obey and for security took back a purchase-money security agreement and note. Obey received a check from Carmel of $1,740.00. This check was payable to Obey and to Town Motors and was endorsed by both payees. Carmel filed a financing statement with the Clerk's office in the Town of Burlington on *January* 11, 1966. On or about *August* 3, 1966 Carmel made a written demand on Banker's for the return of the car and, on *August* 9, 1966 this action for conversion was commenced against Banker's and Pontiac. There was a finding for both defendants, and being aggrieved by the court's finding the plaintiff brings this report.

There was no error. Banker's had filed notice of the security financing arrangements with both the Secretary of State and the City Clerk of Somerville where the original purchaser McKenzie resided. The report is obscure as to the manner in which Obey acquired the car from Town Motors. It is apparent that McKenzie acquired the car by fraud, and, in addition, there was ample evidence to warrant the inference reached by the court that there ''was no evi-

dence that Obey purchased the car in good faith and without knowledge of the security interest of the defendants or either of them.'' However, it is unnecessary to resolve the issue on the basis of these considerations.

In this case Carmel cannot prevail over Pontiac and its assignee Banker's because Banker's filed a financial statement covering the collateral involved in the transaction with both the Secretary of State and the City Clerk of Somerville. G.L. c. 106, § 9-307(2)

While it is true that Carmel filed a financial statement covering its security interest with the Town Clerk of Burlington, its rights are subordinate to those of Banker's which were recorded first. When both security interests have been recorded the statute confers an advantage on that interest which was first recorded. G.L. c. 106, § 9-312 (5) (a). Where one who acquires a security interest in collateral goes as far as the law permits to record same and to publish the fact to the world, it would be foolhardy to contend that his right to the collateral could be successfully challenged by one who recorded an interest in the same collateral at a later date.

On the agreed facts we must conclude that as between the conflicting interests of Pontiac and Banker's, on the one hand, and Carmel, on the other, the former must prevail. **Report dismissed.**

Solomon M. Feldman
  of Boston for the plaintiff
Ruben H. Klainer
  of Boston for the defendant Banker's Discount Trust, Inc.
Samuel E. Kaufman
  of Boston for defendant Pontiac Village, Inc.